Evans and Black *vs.* Percifull.

by the officer's going to the place where it is situated, and there declaring, in the presence of one or more citizens of the county, that he attached the same: and he is required to take the property into possession. In the present instance, the property never was in custody of the officer. It constantly remained, and now is, for aught this court knows, in the possession of the plaintiffs. Upon this state of case, the defendants in error came into court and interpleaded their title to the property acquired by purchase from Johnston, and this title the plaintiffs resisted, alleging that they were inn-keepers, and had a prior lien upon the horses for necessary charges in keeping them. It is perfectly manifest, that between these parties, the circuit court had not cognizance of the cause. Its jurisdiction to hear and determine it, as between the interpleaders and the plaintiffs, arises by virtue of the writ of attachment, and as that was no valid service, of course there was no suit in court between them. The judgment therefore, in this particular, must be reversed.

### EVANS AND BLACK *vs.* PERCIFULL.

Where a decree is a mere nullity, its invalidity may be shown collaterally in another suit; otherwise where it is only reversible for error, when it is binding on the parties until reversed.

The line which separates error in judgment from usurpation, is very definite, and denotes the cases reversible for error by an appellate court, and such as may be declared a nullity.

The errors of the court do not impair the validity of their judgments—they are binding until reversed. If there be a total want of jurisdiction, the proceedings are a mere nullity and confer no right, and may be rejected when collaterally drawn in question.

A court once obtaining jurisdiction of the parties and of the subject matter, has the right to decide every question arising in the cause; and whether its decision be correct or not, until reversed, it is binding in every other court.

Where one is aggrieved by the decision of a court, he should take the proper steps, within proper time to reverse it, and his failure to do so, is the highest evidence of his intention to acquiesce.

The circuit court has jurisdiction in all civil cases not cognizable before justices of the peace, and in cases involving the titles to land, that court necessarily has jurisdiction.

Evans and Black *vs.* Percifull.

THIS was an action of ejectment, determined in the Pulaski Circuit Court, at September term, 1840, before the Hon. JOHN J. CLENDENIN, one of the circuit judges. Percifull sued Evans for a tract of land, in said county, being the S. W. ¼ of sec. 9, T. 2 N., R. 7 W., containing 160 acres. Black was made co-defendant on motion. Plea of the general issue entered by both defendants, and joinder in short, by consent. At the trial, the jury found for Percifull. The defendants, during the trial, excepted to the admission of the evidence offered by Percifull, and filed two bills of exception. The first evidence offered by Percifull, was the deed of the auditor of public accounts of the late Territory of Arkansas, executed by him, under his private seal, in the presence of two witnesses, but neither acknowledged nor recorded, conveying to P. the tax title to the land in dispute, as having been purchased by him, at Auditor's sale of land for taxes in 1834. The other evidence offered by P. was the petition of P. to said Pulaski circuit court for confirmation of the title so obtained, and the advertisement of notice to all persons to contest; the answer of Black to the petition, and the decree of the court confirming the title, at October term, 1837. This was all the evidence offered on the question of title. On the writ of inquiry, the jury found one cent damages. Percifull refused to receive the verdict or to pay the jury, but a rule to show cause was entered against him, returnable at once, and he failing to show cause against the rule, it was made absolute, and he paid the jury. Percifull moved for new trial of the inquiry of damages, but his motion was overruled, and he excepted and filed his bill of exceptions. The bill of exceptions states that the plaintiff proved by three witnesses, that the defendant, Black, had been in possession of the place since 1832, and that the rent of the place was worth $150 a years; but neither one of the witnesses stated whether the land mentioned in the declaration was that upon which the defendant, Black, lived—the identity was not established. The defendants moved the court, upon this evidence, to instruct the jury, that where there was no proof before them as to the title of the plaintiff, or where it commenced, their verdict could only be for nominal damages. This instruction was given, and the plaintiffs excepted. Evans and Black brought error.

*Pike* for plaintiffs.    The rule of law is well settled, that no presumption can be raised in behalf of a collector who sells land for taxes, to cover any radical defect in his proceedings; and the proof of regularity in the procedure devolves upon the person who claims under the collector's sale.    The same rules apply to sales by an Auditor.    *Stead's ex'rs vs. Cause*, 4 *Cranch* 403.    *Parker vs. Rule's Lessee*, 9 *Cranch* 64.    *Williams vs. Peyton's Lessee*, 4 *Wheat.* 77.    *McClung vs. Ross*, 5 *Wheat.* 116.    *Thatcher vs. Powell*, 6 *Wheat.* 119.    *Rankendorff vs. Taylor's Lessee*, 4 *Peters* 349.    *Gaines et al. vs. Stiles*, 14 *Peters* 322.    *James vs. Gordon*, 1 *Wash. C. C. R.* 333.    *Wistar vs. Kammerer*, 2 *Yeates* 100.    *Young vs. Martin*, *id.* 312.    *Watt vs. Gilmore*, *id.* 330.    *Birch vs. Fisher*, 13 *Serg. & R.* 208.    *Blair vs. Caldwell*, 2 *Yeates* 284.    *Jackson vs. Shepard*, 7 *Cowen* 88.    *Garret vs. Wiggins*, 1 *Scam.* 335.

An auditor's deed for land sold for taxes, cannot be permitted to go in evidence to the jury, without proof that the requisites of the law, which subjected the land to taxation and sale, have been complied with; even under a statute which provides that all deeds of lands sold for taxes shall convey to the purchaser all the right, title, and interest, of the former proprietor, in, and to, the land so sold; *and shall be received in all courts as good and sufficient evidence of title in such purchase.* *Gaines et al. vs. Stiles, ub sup.* 2 *Ohio* 233.    *Lessee &c. vs. Hemphill's heirs*, 3 *Ohio* 232.    The deed having been made before the passage of the law, as in this case.

The law in force when the deed was made, governed and determined the effect of it as evidence.    A *subsequent* act, giving such deeds greater effect as evidence, has no effect upon it.    *Garret vs. Wiggins*, 1 *Scamman* 335.

Before any lands could be sold by the territorial auditor, under the act of 1833, they must have been regularly listed for taxation, the list acted upon by the clerk, a copy sent to the auditor, and one filed in the clerk's office, or else the list must have been regularly transmitted by the auditor to the sheriff, in the case of non-resident or military bounty lands.    The land must further have been regularly advertised for sale, sixty days before the sale, and the sale must have taken place on the proper day, and at the court house door.    The

Evans and Black *vs.* Percifull.

land must have been offered for sale, and for want of bidders, stricken off the State; and this must have taken place previous to the first of December, 1828. Then the auditor must have complied with all the provisions of the act of 1833. *Terr. Dig.* 485, 465, *sec's* 15, 16, *p.* 466, *sec.* 17; *p.* 492, *sec.* 87; *sec's* 17, 18, 19, 21, 22, 23, 24, 84, 85, 86, 28, 72.

Transcripts, abstracts, tax lists, &c., required to be registered in books by this law, became *records*, and could not be proven by the certificate or statement of the auditor. Nor could advertisements. *Gaines vs. Stiles, ub sup.*

By the chapter in the Revised Code concerning tax titles, the rule of evidence is changed, and the burden of showing any informality, irregularity, &c., is devolved upon the former proprietor, *only in the particular proceeding for confirmation, created by that chapter.* The deed of the sheriff or auditor is made better evidence than it was before, only when offered in evidence under that particular proceeding.

The deed was never recorded. A sheriff's deed must be recorded like any other deed. *Jackson vs. Post,* 9 *Cowen* 120. *Jackson vs. Terry,* 13 *J. R.* 471.

The decree of confirmation was no evidence. No such proceeding could legally be had on a deed of the *Territorial* auditor. The act only gives the proceeding on deeds executed by the auditor *of the State,* and such are its express words.

*Ashley & Watkins, Trapnall & Cocke,* contra.

*By the Court,* Sebastian, J. The question whether the admission of the deed from the auditor of the Territory, was error in the circuit court is not necessarily presented by the record for adjudication. Nor is it, in the view which we entertain, necessary to decide how far the deed was competent to prove title to the premises in question. Whether the deed was properly admitted or not, is a mere question of practice as to the proper order of making proof of the facts. The deed and record of the proceedings in the suit for confirmation, were virtually introduced together. The effect of the decree rendered in

the previous suit did not depend upon the fact whether the deed was offered previously or subsequent to it. They were both before the court, and constituted a part of the plaintiff's case, and the decree, if not an absolute nullity, was sufficient evidence of plaintiff's title as between the parties, or persons claiming under them, as Evans did under Black.

The cause rests entirely on the question whether the proceedings for confirmation of the title to the land in question were absolutely void or only reversible for error. If the decree of confirmation was a mere nullity, its invalidity can be shown collaterally in another action; if only reversible for error, it is binding as an adjudication of the rights of the parties to the subject in controversy between them until avoided or reversed by a court having appellate jurisdiction. The whole doctrine upon the conclusiveness of judgments and decrees has been ably expounded by the Supreme Court of the United States in the case of *Vorhies vs. Bank of the United States,* 10 *Peters Rep.* 479, and has become too well settled to require discussion. It has been justly said that "the line which separates error in judgment from the usurpation of power is very definite, and is precisely that which denotes the cases where a judgment or decree is reversible by an appellate court, or may be declared a nullity collaterally, when it is offered in evidence in an action concerning the matter adjudicated or purporting to have been so. In the one case, it is a record importing absolute verity, in the other, mere waste paper." There can be no middle character assigned to judicial proceedings, which are irreversible for error. Such is their effect between the parties to the suit, and such are the immunities which the law affords to a plaintiff, who has obtained an erroneous judgment." And again, in the same case the court say, "The errors of the court do not impair their validity; binding till reversed, any objection to their full effect must go to the authority under which they have been conducted." In *Tomlie vs. Thompson,* the court further say, "The general and well settled rule of law in such cases is, that where the proceedings are collaterally drawn in question, and it appears on the face of them that the subject matter was within the jurisdiction of the court, they are voidable only. The errors and irregularities, if any exist, are

to be corrected by some direct proceeding, either before the same court, to set them aside, or in an appellate court. If there is a total want of jurisdiction, the proceedings are void, and a mere nullity, and confer no right, and may be rejected when collaterally drawn in question." Where a court has once jurisdiction over a subject matter and the parties, it has a right to decide every question that arises in the cause; and whether the decision be correct or not, its judgment, until reversed, is regarded as binding in every other court. *Elliott vs. Piersall*, 1 *Peters* 340. 2 *Peters* 169. The decisions of a court, therefore, of competent jurisdiction, must be regarded however erroneous, as the final and paramount test of the rights of the parties to them, unless reversed or annulled by some appropriate proceeding, either in that or an appellate court. These doctrines have become settled rules of property, and it would be of mischievous consequences to disturb them. If a person complains of the proceedings of a court, he should take the proper steps, within the prescribed time to reverse them, and his failure to do so is the highest evidence of his intention to acquiesce in them. It amounts absolutely to acquiescence. By the jurisprudence of almost every country, a time is limited within which a person must assert his rights in the tribunals of the country. Some sanctity and protection must be afforded by these means to the judgments and decrees of courts, as necessary to the protection of property, the quieting of possessions, and to constitute them indisputable muniments of title. Were the rule otherwise, it would be in vain that the law prescribed an act of limitation or a mode of reversing the proceedings of tribunals in the appropriate forums, if the parties should be permitted to controvert their validity whenever collaterally drawn in question in any court. This would be enabling a court to do that indirectly which it could not do directly, and exercise appellate jurisdiction where none is conferred upon it.

It is contended in this case, that the court has no jurisdiction of the subject matter of the suit, and that the proceedings were to be regarded as *coram non judice*, because the case of title under Territorial auditor's deeds was not embraced by the provisions of the Rev. Stat. page 746. The words of the act are, sale "made by the auditor of this State," which, it is insisted, do not embrace deeds or sales made

by the auditor of the Territory, and that this fact goes to the juris-
diction of the court.    The circuit court, at the date of this act, pos-
sessed "original jurisdiction of all civil cases, which shall not be cog-
nizable before justices of the peace."    The subject matter here is
"the title to the land" in question or "in controversy," and jurisdic-
tion of titles to land, was, by the constitution, left in the circuit court,
and whenever any contest arose as to titles to land, the circuit court
necessarily obtained jurisdiction, and which has been defined by this
court, in *Toby et al. vs. Bower*, 3 *Arks*. 361.   "The power to distri-
bute justice by legal trial and determination of the controversy be-
tween the parties, and so concludes them as to the matter adjudicated
and determined."    This jurisdiction could have been exercised in
the ordinary forms, before the act which only prescribed a cumula-
tive mode for the asserting such rights, and more effectually quieting
such titles.   The form of process adopted and subsequent proceed-
ings in the cause are literally in compliance with the statute, and
constructively operated as notice to all persons interested in the sub-
ject matter, and gave the court jurisdiction to bind their rights by its
decree.    The court, in deciding that the provisions of the statute,
embraced the case of sales made by the auditor of the Territory,
undoubtedly misconceived the law, and his proper remedy for redress
was a resort to an appellate court to correct the error.    The fact of
sale by a State auditor, formed no ingredient in the question of juris-
diction, but affected only the manner of its exercise.    It was a mere
link in the chain of title—a part of the evidence constituting the
plaintiff's case, without which he was not entitled to a confirmation
of title.    Had there been no deed at all, the decree would have been
conclusive of the sufficiency of the evidence to warrant it.    *Voorhies
vs. Bank U. S.*, previously cited, and here there was only an insuffi-
cient evidence of title, showing a misapplication of the remedy to
the right to be asserted.    The same result occurs in every case where
a person misconceives the proper form of action.    In such cases the
judgment, though reversible, is not void, but only an improper exer-
cise of jurisdiction, and as such we regard the proceeding in this case.
The judgment of the court, being one of competent jurisdiction,
though erroneous, has been acquiesced in by the parties to it.    It is

to be regarded therefore as a solemn adjudication of their rights, and a muniment of title, by which they are concluded. It is binding, not because it is right, but because the error has been acquiesced in. The judgment of the circuit court must therefore be affirmed.