CASE 14.—ACTION BY THE BLUE GRASS CANNING COM-
PANY AND ANOTHER AGAINST L. & J. A. STEW-
ART FOR DAMAGES FOR BREACH OF WARRANTY.
March 25, 1909.

## L. & J. A. Stewart v. Blue Grass Canning Co. &c.

Appeal from Daviess Circuit Court.

T. F. Birkhead, Circuit Judge.

Judgment for plaintiffs, defendants appeal—Affirmed.

1.  Evidence—Parol Evidence—Varying Terms of Written Agreement.—In an action on a written contract, where defendant

L. & J. A. Stewart v. Blue Grass Canning Co.

pleaded as a defense that the contract as written was executed by mistake, testimony was admissible to vary the terms of the written agreement.

2. Sales—Breach of Warranty—Right to Recover—If defects in tin cans bought for use in canning fruit were latent so that they could not be discovered until the fruit had been placed in the cans and time allowed for fermentation to take place, the buyer would not be estopped to recover damages for breach of warranty as to the quality of the cans because it retained and made use of them.

3. Appeal and Error—Review—Harmless Error—Transfer of Common-Law Action to Equity.—The transfer of a common-law action to equity after a verdict of plaintiff, resulting in the rendition of judgment for plaintiff for the same amount as the verdict, was not prejudicial to defendants; they having in affect a retrial of the case by the chancellor.

4. Process—Constructive Service—Nonresidents—Necessity for Warning Notice.—Where a summons is served on a nonresident when he is actually within the State, and the jurisdiction of the court, a warning order is not necessary.

5. Attachment—Interest in Joint Property.—In an action against two nonresidents, where one was legally served with summons, even if an attachment of their joint property was void as to the interest of the other defendant, because the action had not begun as against him by service of process, the whole of the joint property then undisposed of could upon judgment against both defendants and the sustaining of the attachment be subjected to the satisfaction of the judgment, under Civ. Code Prac., Sec. 209.

6. Attachment—Actions Ex Contractu.—Under statutes confining attachments to causes of action arising ex contractu to entitle plaintiff to the writ, contractual relations must exist between him and defendant or a contract be made for his benefit, and the character of the claim growing out of the contract is not affected so as to preclude an attachment by the fact that tortious elements are involved.

J. D. ATCHISON and C. S. WALKER for appellant.

GEORGE W. JOLLY, B. D. RINGO and LITTLE & SLACK for appellee.

OPINION OF THE COURT BY WM. ROGERS CLAY, Commissioner—Affirming.

Plaintiff Blue Grass Canning Company instituted this action against defendants, L. & J. A. Stewart, to recover the sum of $789.95 as damages for breach of warrants. The jury returned a verdict in favor of plaintiff for $627.90. The defendants moved for a judgment notwithstanding the verdict, and also filed grounds for a new trial. These motions were

all overruled.   The court thereupon transferred the case to equity, and rendered judgment for plaintiff for the same sum fixed by the verdict of the jury. From that judgment, L. & J. A. Stewart appeal.

The Blue Grass Canning Company was a corporation engaged in the business of canning fruits and vegetables at Owensboro, Ky.   The defendants, L. & J. A. Stewart, were manufacturers of tin cans for canning fruits and vegetables. Their place of business was at Rutland, Vt.   The basis of plaintiff's claim was that in February, 1903, it made an agreement with the defendants whereby the latter undertook to furnish it as many as 100,000 cans and 50,000 more if it elected to take such additional quantity. At the time of the purchase it was agreed that the cans were to be so manufactured as to exclude the air therefrom, and preserve the contents of the cans if the tomatoes were properly processed.   The defendants defended on the ground that the contract executed between the parties was in writing and contained the whole contract.   This contract is as follows:

"Washington, D. C., Feb. 15, 1903.
"Order No. ——.
    "L. & J. A. Stewart.
    "Ship to the Blue Grass Can. Co.
    "At Owensboro.
    "How ship—By freight.   When—June 13th.
    "Terms:  Sight draft, bill of lading attached.
    "50 M. 3 lb. cans, 21.50.
    "Seamer furnished free of rent but to be returned at end of season, or to be paid for at $400.00 their option.   Guarantee the cans against leaks caused by leaks in manufacture all above 2 to the thousand.
                    "L. & J. A. Stewart,
                "Blue Grass Canning Co., Inc.,
                    "By J. Ed. Guenther, Pres't."

By amended petition the plaintiff charged that this contract was executed by mistake.   Under the circumstances it was proper to admit testimony to vary the terms of the written agreement.   During the pro-

gress of the trial the court permitted the Central Trust Company, as trustee in bankruptcy of the Blue Grass Canning Company, to file its petition and become a party to the action. It may be true that the question whether or not the Central Trust Company should prosecute this action was considered at a meeting of the creditors, and it was decided not to do so, but application was made to the United States Court for the Western District of Kentucky, and authority there given to the trustee to prosecute the action on condition that the sureties in the attachment bond execute bond in this action for the payment of all costs that might accrue. This bond was executed, and the case accordingly proceeded. It is contended that authority was given the trustee merely to prosecute the suit in its own name, and not to prosecute it in the name of the plaintiff. Whether this be true or not, it is immaterial, as the result in either case would be the same.

Some point is made of the duty of plaintiff to return the cans purchased of defendants immediately, or to make complaint of their imperfection. According to the testimony for plaintiff, however, the defects were latent, and the effect upon the tomatoes could not be shown until they were placed in the cans and time allowed for the fermentation process to take place. Under this state of facts we would not hold, as a matter of law, that plaintiff was estopped to recover damages because it retained the cans and made use of them. Summers Fiber Co. v. Walker, 109 S. W. 883, 33 Ky. Law Rep. 153.

In the court's instructions the question whether the writing filed with defendants' answer constituted the whole contract, or whether the contract was as claimed by plaintiff, fairly submitted to the jury. In case the written contract contained the whole contract, the instructions authorized a recovery for loss by leakage of cans from defective manufacture above two in a thousand, and in case the jury believed the paper of February 15, 1903, did not contain the whole contract between the parties, then a recovery was

authorized for damages based upon plaintiff's evidence as to what the contract was. The jury were further told that, if the cans were defective in manufacture above two in a thousand, and plaintiff could have discovered the defects by ordinary care and inspection, and failed to do so, then defendants were not liable for any loss of fruits or vegetables placed therein in excess of two to the thousand. In giving the measure of damage the jury were told to find the value of the lost fruit. While the court should have used the expression "market value," its failure to do so was not prejudicial error. It may be admitted that the instructions given by the court are subject to criticism, but we are of opinion that issues involved were fairly presented to the jury.

There was a sharp conflict in the evidence as to whether the damages resulted from insufficient sterilization on the part of the plaintiff or from the alleged defects in the cans furnished by the defendants; but there was abundant evidence upon which to submit plaintiff's theory of the case to the jury, and we are unable to say that the jury's verdict was flagrantly against the evidence. As this was a common law action for damages, we fail to see any necessity for the court's order transferring the case to equity. This action, however, was not prejudicial to the defendants, for it in reality afforded them a retrial of the case by the chancellor, who reached the same conclusion as the jury.

The court did not err in overruling defendants' motion for a judgment notwithstanding the verdict. While plaintiff filed a number of amendments in an effort to state a cause of action, we are of the opinion that the petition and the various amendments thereto, do state a cause of action, and amply sustain and support the verdict. But it is insisted that the attachment obtained in this action is void; it being argued that, under the Code, an attachment cannot be obtained until the suit is commenced, and that suit is not commenced until it is filed and process issued, or, in the case of nonresidents, a warning order is

had. At the time of the institution of this action on September 3, 1904, one of the defendants, J. A. Stewart, was in Owensboro, Ky., and summons was served on him on that day. The mere fact that he was a nonresident did not require a warning order as to him when he was actually within the State and within the jurisdiction of the court. Suit, therefore, was begun as to him. Section 208 of the Civil Code of Practice has no application to a case like this. This action is controlled by Section 209, which provides: "In an action against joint debtors, in which an interest in joint property is attached under an order of attachment against only a part of them, if judgment be rendered against all of the defendants, and the attachment be sustained, the court may subject the whole of the joint property, then undisposed of, to the satisfaction of the judgment." Even admitting that the property was improperly attached under the order of attachment against L. Stewart, it was properly attached under the attachment against J. A. Stewart, who had been served with process. On October 17, 1904, L. and J. A. Stewart filed their joint answer, and thereby entered their appearance to the action. Afterwards judgment was rendered against them, and the attachment sustained. As judgment had been rendered against all of the defendants and the attachment sustained, the court therefore had the power to subject the whole of the joint property then undisposed of to the satisfaction of the judgment. Under these circumstances the levy of the attachment under an order of attachment against both L. and J. A. Stewart, when the order should have gone against J. A. Stewart alone, was not prejudicial to the substantial rights of appellant L. Stewart or either of the appellants.

But it is earnestly insisted that an attachment does not lie in this case because the damages sought to be recovered are unliquidated, and the contract furnishes no measure nor standard for ascertaining them; but resort must be had to extrinsic facts or circumstances. In support of this position we are cited

to several well-considered opinions. In this case, however, the court did not permit a recovery of damages by way of possible profits. It confined plaintiff's recovery to the market value of the goods spoiled. If the contract was as claimed by plaintiff, then all that the jury had to determine was the number of cans of spoiled goods and the market value thereof. There was nothing speculative or uncertain about this. It could be easily determined. Furthermore, with all due respect to the court's holding to the contrary, we are of the opinion that the correct rule applicable to attachments on demands arising ex contractu is announced in 4 Cyc. 440, where it is said: "Under some statutes the right to issue attachments is confined to causes of action arising ex contractu, and where this is the case, in order for plaintiff to be entitled to the writ, it is essential that contractual relations exist between him and defendant, or else that the contract be made for his benefit. Under such statutes the remedy has been held to be authorized in actions on bonds and undertakings, for breach of warranty, for breach of contract to deliver goods, and in other actions on money demands arising ex contractu. Where the claim grows out of contract, its character as such is not affected, so as to preclude an attachment, by the fact that tortious elements are involved."

It may be conceded that there were a number of irregularities in the proceedings in this case. To consider all the errors alleged to have been committed would extend this opinion to too great length. Suffice it to say that we have carefully considered the whole record, and are of opinion that none of the errors relied upon as grounds for reversal were prejudicial to the substantial rights of appellant.

Wherefore the judgment is affirmed.