FARM SERVICE COOPERATIVE, INC.
v. GOSHEN FARMS, INC. et al

78-196                                    590 S.W. 2d 861

Opinion delivered December 10, 1979
(In Banc)
[Rehearing denied January 14, 1980.]

326

*Dickson & Ball,* for appellant.

*Jones & Segers* and *Pearson & Pearson,* by: *Thomas Pearson;* for appellees.

John A. Fogleman, Justice. Appellant Farm Service Cooperative, Inc. questions the propriety of a summary judgment dismissing its counterclaim against Goshen Farms, Inc. and cross-complaint against George Melbourn and Carl Rose. This pleading was filed in a suit brought by Goshen Farms, Inc. (hereafter referred to as Goshen) against Farm Service Cooperative, Inc. (hereafter called Farm Service).

The questions at issue will be better understood if we first develop some of the background about which there seems to be no dispute. Goshen leased a dwelling house and four poultry houses, and the equipment therein, to Farm Service by written lease dated March 19, 1969 for a term of three years beginning April 2, 1969. Melbourn and Rose were the only two stockholders of Goshen. Each of them owned one-half of the outstanding capital stock. Melbourn was employed as general manager of Farm Service until his employment was terminated on or about August 15, 1970.

After the termination of the lease Goshen filed an action in the Circuit Court of Washington County (No. 8360) on May 17, 1972, seeking a declaratory judgment declaring the rights of the parties to the lease and recovery of damages for injury to the leased property allegedly done by Farm Service. By agreement of the parties, that part of Goshen's complaint seeking declaratory judgment was tried and a jury verdict adverse to Goshen was rendered on May 12, 1973. It was agreed by the attorneys for the parties that the portion of Goshen's complaint seeking recovery of damages would be deleted and that Farm Service would not plead prior adjudication if an action for damages to personal property should subsequently be filed.

On December 1, 1972, Melbourn had filed an action (No. 8749) against Farm Service claiming damages for the alleged breach of his contract of employment by Farm Service. This case was tried beginning February 3, 1975. A jury verdict in favor of Farm Service was returned on February 5, 1975, and judgment was entered pursuant to that verdict.

On May 24, 1974, Goshen Farms did file an action (CIV 74-351) in the Circuit Court of Washington County seeking to recover $6,000 damages for injury to personal property. This complaint was amended to increase the amount of damages sought to $7,500 on December 5, 1975. This case was set for trial on September 10, 1976, but it was dismissed without prejudice by Goshen Farms on September 2, 1976.

The present action was filed on January 17, 1977. In its complaint, Goshen again alleged that the use of the leased

property and equipment by Farm Service caused extensive damage to the property and equipment, and that Farm Service had breached the lease contract by failure to comply with its agreement to return the leased premises, property and equipment to Goshen upon termination of the lease in the same condition they were at the time Farm Service took possession. Goshen sought damages of $7,500. Farm Service filed an answer, which was a general denial, reserving the right to amend and to file other pleadings if further investigation and discovery procedures warranted the filing of additional pleadings.

Farm Service did file its counterclaim and cross-complaint on April 6, 1977. It alleged that: Goshen was the alter ego of George Melbourn and Carl Rose; and that Melbourn and Rose, through their alter ego, Goshen, had instituted civil action against it for declaratory judgment and for damages on May 17, 1972; that Melbourn had brought his action against Farm Service on December 1, 1972; that on May 24, 1974, Melbourn and Rose, through their alter ego, Goshen, had instituted another action for damages against Farm Service, which it dismissed shortly before the designated trial date; that each action was terminated favorably to Farm Service and that each of them and the present action had been brought by Melbourn and Rose maliciously and without probable cause and for the purpose of harassing Farm Service; that Goshen had, through Melbourn, repeatedly made threats to institute additional civil actions against Farm Service; that Farm Service had been compelled to pay $20,455.12 in attorney's fees in connection with these actions and would be required to pay additional attorney's fees in defending this action; and that appellant was entitled to recover exemplary damages. Farm Service prayed for its attorney's fees, $10,000 exemplary damages and dismissal of the complaint.

The demurrers of Goshen, Melbourn and Rose were overruled on May 12, 1977. Goshen's reply and the answer of Melbourn and Rose were consolidated in a pleading filed May 25, 1977. They denied that Melbourn and Rose, acting through their alter ego, Goshen, had, on May 17, 1972, commenced a civil action against Farm Service, but admit-

ted that Goshen had, on May 17, 1972, commenced a civil action, and that, by an agreement between the attorney for Goshen and the attorney for Farm Service, the issue of damages to property was to be severed and handled in separate litigation.

On April 12, 1978, Goshen, Melbourn and Rose filed their motion for summary judgment on the counterclaim and cross-complaint filed against them by Farm Service, asserting that there was no justiciable issue of fact and that Goshen was not the alter ego of Melbourn and Rose. The motion was based upon the pleadings and judgments in all the actions previously mentioned, including those in the present action, all of which were made exhibits to the motion, along with the following:

1. The affidavit of F. H. Martin, the attorney of record for Goshen in the action filed against Farm Service on May 17, 1972, stating the agreement relating to splitting of that cause of action, so the portion relating to the declaratory judgment on the lease agreement could be tried without prior adjudication being pleaded when the cause of action for damages to personal property was filed. The agreement was confirmed by letter to Martin from James F. Dickson, dated April 25, 1974.

2. The docket sheet in the case of Goshen against Farm Service (No. 74-351), showing an entry dated September 2, 1976, over the signatures of Thomas Pearson and Joseph William Segers, Jr., dismissing the action without prejudice.

3. Responses of Goshen, through its president George Melbourn, to interrogatories propounded to it by Farm Service in No. 74-351.

4. The affidavit of Carl Rose that he was one of the incorporators of Goshen, which was organized and incorporated in December, 1975 and early 1976, that shortly thereafter all the stockholders, except for himself and Melbourn, "passed out of the picture," and that, at the time of the filing of cause No. 8749 by

Melbourn and at all times subsequent thereto, he and Melbourn were the only stockholders of Goshen; and that Goshen Farms, Inc. is a separate entity from him and Melbourn, and that it is still in existence as a corporation.

In its response to the motion for summary judgment, Farm Service asserted that Goshen, Melbourn and Rose were not entitled to judgment as a matter of law upon the ground that the verified pleadings in the case, discovery depositions and interrogatories showed that there remained disputed questions of fact. The affidavit of Walter F. Losey, general manager of Farm Service, was filed with this response. In the affidavit, Losey stated that: after Melbourn was fired as general manager of Farm Service on August 15, 1970, he made numerous statements to Losey and others that he would get even with Farm Service, or words to that effect; that on November 20, 1977, Rose indicated to Farm Service that he was turning over the decision-making process of the corporation to Melbourn; after relating the allegations of the counterclaim and cross-complaint as to the various lawsuits, that no probable cause existed for the filing of the actions; and that Melbourn had also repeatedly made threats to institute additional civil actions against Farm Service.

The circuit court's order granting summary judgment dismissing the counterclaim and cross-complaint was based upon the following reasons:

The original Case No. 74-351 claimed damages for breach of contract in failing to vacate the premises and excessive damages to poultry equipment. The attorneys for the parties stipulated that the cause of action for damages to poultry equipment should be passed for trial at a future date. The cause of action seeking damages for breach of contract for failing to renew lease resulted in a verdict for defendant.

The contents of the Complaint show no indiscretion or malice expressed or implied. The doing of something a person has a legal and procedural right to do is no basis for malice.

The present suit by Goshen against Farm Service has no connection with the employment controversy between Farm Service Cooperative and George Melbourn. The fact that George Melbourn was a substantial stockholder in Goshen Farms, Inc., in itself is immaterial in piercing the corporate entity unless one of the following is alleged and proved:

(1) To prevent a contravention of governmental policy.
(2) In case of a national emergency.
(3) Fraud.
(4) Inequity of limited liability.
(5) Injustice to controlling shareholder.
(6) Oppression of a shareholder's interest.
(7) Jurisdictional and procedural factors.

None of these grounds have been alleged or proved nor is there any proof of them to justify piercing the corporate entity and holding George Melbourn and Carl Rose personally liable as to the counterclaim for malicious prosecution. The counterclaimant must allege and prove the original proceedings terminated in his favor, *Coffelt* v. *Gordon,* 239 Ark. 619. In addition, Farm Service Cooperative must allege and prove that the proceeding terminated in such a manner that it cannot be revived.

This part of the suit is still pending and unresolved.

The Farm Service Cooperative might well have some cause against Goshen Farms as to the first suit as it was terminated in its favor but such suit would have to be a separate cause of action in another suit. Lack of probable cause in the first suit must be proved independently of the element of malice, *Gazzola* v. *New,* 191 Ark. 724.

The essential elements for the tort of malicious prosecution are:

(1) A proceeding instituted or continued by the de-

fendant against the plaintiff.

(2) Termination of the proceeding in favor of the plaintiff.

(3) Absence of probable cause for the proceedings.

(4) Malice on the part of the defendant.

(5) Damages.

The Farm Service Cooperative in its brief refers to allegations of "Malicious Abuse of Process" but a careful reading of the counterclaim fails to reflect any such allegation.

Farm Service Cooperative refers to the nonsuit of 74-351 of the claim for damage to poultry equipment, which is the same allegation that is contained in this suit, as malicious. The taking of a nonsuit and refiling within one year is a statutory right given to any litigant and cannot be considered as evidence of malice or want of probable cause. This nonsuit also is not a final determination of the lawsuit upon which a suit for malicious prosecution could be brought.

We do not agree with appellees that the order granting summary judgment is not appealable, as a final judgment. It dismisses the counterclaim, and thereby discharges both Melbourn and Rose from this action. The dismissal of this counterclaim was not by granting a motion for dismissal but by summary judgment. A summary judgment could be a judgment on the merits. 6 Moore's Federal Practice (2d Ed.) 56-55, § 56.03. As such, it could be conclusive as to the rights of appellant as to some portions of his counterclaim in a future action. We view the requirements of finality in such a case from a practical, rather than technical, approach. *Purser* v. *Corpus Christi State National Bank,* 256 Ark. 452, 508 S.W. 2d 549. When we do, we find this order appealable.

We stated the rule of finality in *Johnson* v. *Johnson,* 243 Ark. 656, 421 S.W. 2d 605. There we said:

*** For a judgment to be final and appealable, it must in form or effect: terminate the action; operate to divest some right so as to put it beyond the power of the court

to place the parties in their former condition after the expiration of the term; dismiss the parties from the court; discharge them from action; or conclude their rights to the matter in controversy.

Appellant contends that the counterclaim and motions for summary judgment present a question of fact concerning the issue of malicious prosecution. The parties agree that the trial judge correctly stated the elements of the tort of malicious prosecution.

Appellant alleged that there was no probable cause for any of the actions by Melbourn or Goshen, and that they were brought maliciously. Although both are essential elements of the tort of malicious prosecution, malice and probable cause are not convertible terms and neither follows as a legal presumption from the other. *Foster* v. *Pitts,* 63 Ark. 387, 38 S.W. 1114. The two elements must concur. *Gazzola* v. *New,* 191 Ark. 724, 87 S.W. 2d 68. Although a jury may infer malice from lack of probable cause, lack of probable cause may not be inferred from malice. *Malvern Brick & Tile Co.* v. *Hill,* 232 Ark. 1000, 342 S.W. 2d 305; *Louisiana Oil Refining Corp.* v. *Yelton,* 188 Ark. 280, 65 S.W. 2d 537; *Foster* v. *Pitts,* supra; *Chicago, R.I. & P. Ry. Co.* v. *Gage,* 136 Ark. 122, 206 S.W. 141. The burden was on appellees, as movants, to show that there were no justiciable issues of fact. *Lee* v. *Westark Investment Co.,* 253 Ark. 267, 485 S.W. 2d 712. There is nothing in the affidavits or documents filed with the motion for summary judgment to show that there was any probable cause for the actions. Consequently, we must say that appellees have failed to show that there is not a justiciable issue as to lack of probable cause for them; and, since malice may be inferred from lack of probable cause, there was an issue of facts as to malice. This does not mean that the motion for summary judgment must be reversed in its entirety.

Insofar as the declaratory action is concerned, there has been a final determination of the action favorable to appellant, and, if the other elements of the tort of malicious prosecution exist, summary judgment would not be proper. We do not agree that a suit for malicious prosecution on

account of this action could only have been brought as a separate cause of action. Under Ark. Stat. Ann. §§ 27-1121, 27-1123 (Repl. 1962) this cause of action would be barred if not asserted by way of counterclaim in the present action. *May* v. *Exxon Corporation,* 256 Ark. 865, 512 S.W. 2d 11. Of course, the suit by George Melbourn against Farm Service had been terminated favorably to appellant. But the action against George Melbourn for malicious prosecution on that account is not properly the basis of a cross-complaint in the present action unless Goshen is the alter ego of Melbourn. The mere fact that Melbourn owned 50% of the stock of the corporation does not make that corporation his alter ego. Actually, the fact that someone else owns one-half of the corporate stock is a strong indication that it is not.

The affidavit of Rose clearly refutes the allegations of Farm Service that the corporation was the alter ego of Melbourn. It is not alleged that Rose is the alter ego of Melbourn or that he had anything to do with the action brought by Melbourn. Nothing in the sole affidavit presented by Farm Service refutes the statements in the affidavit of Rose. The statement of Rose to Losey, that he was turning the management decisions over to Melbourn, made after the present action was begun, does not begin to support the allegations of Farm Service or refute Rose's statements. There simply is no basis shown for piercing the corporate veil, either by the allegations of the complaint or by the affidavits filed. " . . . [W]hen the movant makes a prima facie showing of entitlement to the relief sought, the respondent must remove the shielding cloak of formal allegations and demonstrate a genuine issue as to a material fact." *Miskimins* v. *City National Bank,* 248 Ark. 1194, 456 S.W. 2d 673.

There certainly is no basis for a counterclaim for malicious prosecution in the filing of the present action. One of the elements of that tort is termination of the proceeding in favor of the party seeking recovery for malicious prosecution. *Coffelt* v. *Gordon,* 239 Ark. 619, 390 S.W. 2d 633. This action had not been terminated when the counterclaim and cross-complaint were filed or until the motion for summary judgment was granted against Farm Service, so an essential element of the cause of action as to the present complaint is

missing. As a matter of fact no action by Goshen for damages to personal property has been terminated favorably to Farm Service. The deletion of the damage claim from the first action by Goshen by agreement of the parties was certainly not a termination of the proceeding, when it was expressly agreed that prior adjudication would not be pleaded. The dismissal without prejudice of the next action by Goshen was permissible and was not a termination of proceeding in the sense required by the definition of malicious prosecution. In *Coffelt* we pointed out that, until a complaining party has shown that the action against him was unsuccessful, he has not shown that he has suffered any damage, so if he were permitted to sue before he had won the first suit, he might secure a recovery for the bringing of an action which the court entertaining it might find to be well brought.

The present action was permissible under Ark. Stat. Ann. § 37-222 (Repl. 1962); *Oliver* v. *Miller,* 239 Ark. 1043, 396 S.W. 2d 288; *Campbell* v. *Coldstream Fisheries,* 230 Ark. 284, 322 S.W. 2d 79. Until it is concluded, there is no basis for a cause of action against Goshen for malicious prosecution on the claim for damages for injury to personal property. The summary judgment as to that cause of action was correct because it was prematurely brought.

A similar situation was considered in *Hales* v. *Raines,* 162 Mo. App. 46, 141 S.W. 917 (1911), a malpractice action brought after the plaintiff had suffered an involuntary non-suit in a prior suit instituted against a physician on the same cause of action, except for some allegations of negligence omitted in the second suit. The defendant filed a counterclaim for malicious prosecution in the second suit based on the omitted allegations of negligence. The trial court peremptorily instructed a verdict for the plaintiff on the counterclaim. On appeal it was held that this action was proper because it could not be said that the cause of action was concluded or its prosecution ended by the non-suit. The court there said:

> \*\*\* One matter which it is essential to show in a suit for malicious prosecution is that the prior prosecution or

suit is ended, and plaintiff in the malicious prosecution action is finally discharged therefrom. Until such appears, no cause of action as for a malicious prosecution has accrued, for the very good reason that plaintiff in the suit alleged to have been maliciously prosecuted may finally prevail, and thus put an end to the whole matter. In this view the courts universally declare that, where a suit or prosecution has been commenced and afterwards dismissed with the intention of commencing it over again on the same cause of action, and it appears that it has been subsequently commenced thereon, such prior dismissal amounts to no more than a suspension of the prosecution, and is not an ending thereof in the legal sense essential to support a suit for malicious prosecution of the prior action. In other words, until the subsequent suit on the same cause of action is finally disposed of adversely to plaintiff therein, defendant may not maintain a suit on account of its malicious prosecution; for, in contemplation of law, the prior suit is regarded as still pending. ***

We agree with that court and its holding, where, as here, there was a voluntary non-suit, with the right to refile the action within one year.

Appellant relies upon *Greer* v. *Cook,* 88 Ark. 93, 113 S.W. 1009, to support its contention that a cause of action for abuse of process was stated. It reads the opinion in that case as holding that when any action is commenced for vexation and oppression there is an abuse of process. This was not the holding in *Greer.* There we held that the remedy for the institution of a suit by a creditor in a foreign jurisdiction, after a suit on the same cause of action had been reduced to judgment in a justice of the peace court in Arkansas and while an appeal from that judgment was pending, for the sole purpose of vexation and oppression of the judgment debtor, was an action at law for the malicious abuse of process, upon the authority of *Baxley* v. *Laster,* 82 Ark. 236, 101 S.W. 755, 10 LRA (n.s.) 983, 118 Am. St. Rep. 64. It is significant that in *Greer* a writ of garnishment had been issued and served upon the judgment debtor's employer in Arkansas and that the new suit in the foreign jurisdiction included garnishment

proceedings against the employer to seize the same wages covered by the Arkansas garnishment, allegedly for the purpose of defeating the judgment debtor's exemptions in Arkansas.

The trial court correctly held that there were no allegations which would support a cause of action for abuse of process. The following comments on this cause of action in a note entitled "Malicious Prosecution — The Law in Arkansas," by Larry C. Wallace, in Arkansas Law Review, Vol. 22, p. 340 at p. 355 et seq, are appropriate.

*** This narrow tort, seldom used in Arkansas, means exactly what it says: it is the misuse of some court process, civil or criminal, after it has been properly obtained, for some ulterior purpose not contemplated by law.

The essential elements of abuse of process are usually stated to be: first, an illegal, improper use of the process; second, an ulterior purpose which culminated in the abuse; and third, a resulting damage. In an action for malicious prosecution the court concentrates on the facts before the action was commenced, while in an action for abuse of process, the question is whether the use or application of legal process, after it was issued, was one for which it was designed.

Abuse of process is used as a label for a variety of situations where the circumstances will not warrant an action for malicious prosecution. Use of judicial process which has been held to justify an action for abuse of process includes: (1) wilful and malicious arrest of plaintiff when his innocence is known; (2) personal service procured by fraud; (3) excessive execution on a judgment; (4) vexations and oppressive suits in a foreign jurisdiction, and (5) attachment or garnishment for a greatly excessive amount.

See also, *Baxley* v. *Laster,* supra.

There is nothing here even suggestive of such a cause of

action as the author of that note properly describes. Examples of abuse of process are found in some of our decisions. In *Baxley,* we held that a judgment debtor's allegations that repeated issuance of writs of garnishment by a judgment creditor were to annoy, vex and harass the debtor, to tie up the wages which were his only means of support, and to cause him to lose time and incur expenses in attending court, issuing notices, filing schedules and claims of exempt property, and making defenses to the suits and to endanger his occupation would support an action for abuse of process.

The crux of the cause of action is the improper use of process after it was issued. *Smith* v. *Nelson,* 255 Ark. 641, 501 S.W. 2d 769. There is simply no cause of action for abuse of process stated here.

Appellant complains, however, that appellees argued, in support of their demurrer, that appellant's counterclaim is couched in terms of "abuse of process and/or malicious prosecution." Appellant then says that, if the court had sustained, rather than overruled, the demurrer, appellant could have amended its complaint, but that by reason of the summary judgment, it is deprived of that right. Although there is some question about appellant's right to amend at this state of the proceeding, we feel that it should be given ten days after the filing of the mandate in the trial court to amend its complaint to state a cause of action for abuse of process, if it has one.

The summary judgment is reversed as to Goshen insofar as the declaratory judgment action is concerned, and as to Melbourn, insofar as his suit against Farm Service is concerned; otherwise, it is affirmed, subject to the right of appellant to amend its complaint to state a cause of action for abuse of process within ten days after the mandate from this court is filed in the trial court.

HARRIS, C.J., not participating.

BYRD, J., dissents as to the reversal.